IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:22-CV-00101

WEI JIANG, MD

    Plaintiff,

v.

DUKE UNIVERSITY, DUKE UNIVERSITY HEALTH SYSTEM, MORIA RYNN, MD, in her individual and official capacity, and MARY E. KLOTMAN, in her individual and official capacity,

    Defendants.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PURSUANT TO RULE 12(b)(6)**

# INTRODUCTION

The arguments in Plaintiff's Response in Opposition to Defendants' Motion to Dismiss are foreclosed by the facts alleged and the documents referenced in her Complaint and are contrary to applicable law. Accordingly, the Complaint should be dismissed with prejudice.

# ARGUMENTS AND AUTHORITIES

## I. Plaintiff's Employment Discrimination Claims Fail

### A. Plaintiff's Conclusory Allegations of Disparate Treatment or Discriminatory Discipline Fail

Plaintiff argues that the Complaint sufficiently alleges discriminatory animus because it alleges that Defendants "made inquiries to Plaintiff about her trips to China[,] insinuating they were improper," and "[t]hese allegations are specifically connected to Plaintiff's race and national origin, and demonstrate that Defendants were very cognizant of Plaintiff's race and national origin." (Pl. Resp. at 17 [ECF No. 9].) However, these allegations do not demonstrate "'conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *See Clements v. Town of Sharpsburg*, 2019 U.S. Dist. LEXIS 175926, *5-6 (E.D.N.C. Oct. 10, 2019) (quotations and citation omitted). The communications Plaintiff references did not express concern that the destination of Plaintiff's trips was China or otherwise indicate hostility

towards China as a nation or towards people of Chinese national origin.  (*See* Compl. ¶¶ 150-151.)  Rather, they expressed concerns as to whether Plaintiff's travel was properly documented and reported for purposes of complying with federal requirements for receiving funding.  (*Id.*)  Thus, they do not reflect a discriminatory attitude about Plaintiff's national origin and do not allege that Defendants' actions against her were motivated by discriminatory animus.

Plaintiff further argues that the Complaint "implicitly and explicitly alleges that no other non-Asian, male, or younger researchers have had their concluded research activity so scrutinized for errors" and Defendants "have provided no examples of how such scrutiny is commonplace." (Pl. Resp. at 17, 20-21.)  A "discriminatory discipline" claim requires allegations that the plaintiff's "prohibited conduct was comparably serious to misconduct by employees outside the protected class" and "the disciplinary measures taken against her were more harsh than those enforced against other employees." *Prince-Garrison v. Md. Dep't of Health & Mental Hygiene*, 317 Fed. App'x 351, 353-54 (4th Cir. 2009).

The Complaint contains only bare, conclusory recitals that individuals outside of Plaintiff's protected classifications never were subjected to the same type of investigations and discipline as she was. (Compl. ¶¶ 44, 63, 68, 75, 85-87.)  Plaintiff fails to identify specific employees outside of her protected

2

classifications who engaged in comparable non-compliance with research policies and regulations and yet were subject to less serious investigation or discipline. *See Prince-Garrison*, 317 Fed. App'x at 354.

Although the Complaint alleges at length Plaintiff's version of events, it fails to allege any facts showing that Defendants' actions were harsher than actions against any other employees who engaged in comparable research non-compliance.[1] *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) ("[T]he complaint fails to establish a plausible basis for believing [the supervisor] and [the plaintiff] were actually similarly situated" or that the supervisor's actions "were improper, let alone that any impropriety was comparable to the acts [the plaintiff] was alleged to have committed."); *Vega v. Wake Co. Govt.*, 2015 U.S. Dist. LEXIS 39452, *12-13 (E.D.N.C. Mar. 27, 2015) ("[The plaintiff] recounts at length his version of events that led to written disciplinary reports . . . He does not, however, allege any facts to suggest that the disciplinary measures taken against him were harsher than the discipline imposed on other employees who committed comparable misconduct."); *see also Blakney v. N.C. A&T Univ.*, 2019 U.S. Dist. LEXIS 45794, *47 n.26 (M.D.N.C. Mar. 20, 2019) ("[A] plaintiff must establish facts to allow this court to

---

[1] It is not Defendants' burden to produce examples of instances in which it has treated similarly situated comparators in the same or similar manner, and introducing that kind of evidence is impermissible at the Rule 12(b)(6) stage.

3

reasonably infer that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of those outside the protected class.") (citations omitted). Conclusory allegations of different treatment of similarly situated comparators outside of a plaintiff's protected classifications do not withstand Rule 12(b)(6). *See, e.g.*, *Harman v. Unisys Corp.*, 356 Fed. App'x 638, 640-41 (4th Cir. 2009); *Clark v. Guilford County*, 2017 U.S. Dist. LEXIS 162024, *14 (M.D.N.C. Sept. 30, 2017) (Biggs, J.).

To compensate for the dearth of facts showing discriminatory motive, Plaintiff argues the Complaint sufficiently alleges that Defendants' stated reasons for their actions were pretextual because it alleges that Defendants' explanations for their adverse actions changed over time and that their explanations were false and "based on misapprehensions of scientific principles."[2] (Pl. Resp. at 19-20.) "Even where the complaint plausibly alleges the reason an employer gave for the termination of employment was false, it

---

[2] The facts pleaded and documents referenced in the Complaint do not demonstrate that Defendants' explanations changed over time. Additional facts were discovered and considered as a result of the two-year long investigation process. (*See* Compl. ¶¶ 56-59, 66-75, 102-106, 118-119, 129, 130-132, 134-135, 143; Def. Mem. in Supp. Ex. A, C, D, F, H, J [ECF Nos. 6-1, 6-3, 6-4, 6-6, 6-8, 6-10]; Pl. Resp. Ex. 2, 4 [ECF Nos. 9-2, 9-4].) Plaintiff's argument that the explanations were "based on misapprehensions of scientific principles," (Pl. Resp. at 19-20), is simply her subjective disagreement with the findings of the investigation, which is insufficient to show pretext. *See Clark*, 2017 U.S. Dist. LEXIS 162024 at *14.

4

still must 'establish a plausible basis for believing . . . that [the protected classification] was the true basis for [the plaintiff's] termination.'" *Weaver v. Cary Academy*, 2021 U.S. Dist. LEXIS 184077, *25 (E.D.N.C. Sept. 27. 2021) (quoting *Coleman*, 626 F.3d at 190-91). Thus, "even accepting that the operative complaint contains allegations of fact which undermine [Defendants'] explanation for its conduct, it does not contain sufficient factual matter to give rise to a reasonable inference that the proffered reasons were mere pretext for unlawful discrimination." *Id.* at *25-26 (quotations and citations omitted). "[E]ven when combined with [P]laintiff's claim of pretext," the allegations "cannot import a plausible basis for believing that [a protected classification] was the true reason for" Defendants' actions. *Id.* at *26.

### B. Plaintiff Fails to Allege a Hostile Work Environment

To allege a hostile work environment, Plaintiff must allege facts demonstrating that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Thomas v. East Penn Mfg. Co.*, 2020 U.S. Dist. LEXIS, 133408, *43 (M.D.N.C. July 28, 2020).

Plaintiff argues that the Complaint alleges that the faculty ombudsman, witnessed Dr. Rynn's hostile behavior towards Plaintiff during a meeting. (Pl.

5

Resp. at 23.)  She further argues: "[T]he facts alleged include the initiation of the attack on her research by Defendant Rynn, Rynn's continued pursuit of these attacks, her relentless and dogged attack on Plaintiff's trips to China, along with her refusal to provide any references on behalf of Plaintiff for different positions within Duke, her serious salary cut, [and] her efforts to have JAMA retract the REMIT study articles."  (*Id.* at 24.)

First, these allegations fail to show that Defendants' actions had anything to do with Plaintiff's protected classifications.  *See Ali v. BC Architects Eng'rs, PLC*, 832 Fed. App'x 167, 172 (2020) (allegations that defendant "repeatedly asked about [the plaintiff's] travels to Turkey; that she was demoted—twice—after those travels; and that, at the time she was fired, an owner commented that she was being terminated, in part, for 'bringing [her] mother's problems' into the workplace" failed to allege racial animus); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("[Plaintiff]'s complaint is full of problems she experienced with her coworkers and supervisors.  These facts, however, do not seem to have anything to do with gender, race, or age harassment.").  The Complaint alleges no comments by Dr. Rynn or anyone else reflecting discriminatory animus and fails to allege that Dr. Rynn or anyone else treated similarly situated employees outside of Plaintiff's protected classifications differently.  *See Vega v. Wake Co. Govt.*,

2015 U.S. Dist. LEXIS 39452, *18-19 (E.D.N.C. Mar. 27, 2015) ("The principal problem with [the plaintiff's] attempt to allege a hostile work environment is that . . . [he] does not allege that [his supervisor] made comments reflecting a discriminatory animus nor that she treated similarly-situated employees . . . differently than she treated him.").

Second, these allegations merely state that in the meeting, Dr. Rynn "became more and more restless and irritable," and "[a]t one point, . . . accused Plaintiff of being too calm, and stated that if she were Plaintiff, she would be anxiously staying at Duke, not going anywhere else." (Compl. 98.) This does not allege "harassment," and certainly does not allege "severe and pervasive" harassment that created an abusive atmosphere. *See Ali*, 832 Fed. App'x at 172; *Bass*, 324 F.3d at 765 ("[T]he facts she alleges merely tell a story of a workplace dispute . . . and some perhaps callous behavior by her superiors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim.") These allegations fall short of more concerning conduct this Court has held insufficient to allege a hostile environment. *See, e.g.*, *Thomas*, 2020 U.S. Dist. LEXIS, 133408, at *42-43; *Vincent*, 2020 U.S. Dist. LEXIS 175505 at *20-21.

### C. The Claims for Individual Liability Fail

Plaintiff argues that the Complaint states valid claims for individual

liability under Section 1981 because it alleges that Dr. Rynn took the adverse actions against Plaintiff and Dr. Klotman approved those actions. (Pl. Resp. at 25.) However, it is not enough to allege that Dr. Rynn and Dean Klotman had "personal involvement" in Defendants' actions. Section 1981 individual liability requires that they be "personally involved in ***purposeful, discriminatory actions***." *See Hilderbrand v. Pelham Transp. Corp.*, 2021 U.S. Dist. LEXIS 121970, *11-16 (M.D.N.C. June 30, 2021) (emphasis added). The Complaint fails to allege that any of Dr. Rynn's or Dean Klotman's actions were taken with purposeful, discriminatory or retaliatory animus against Plaintiff. (Compl. ¶¶ 34, 37, 44, 63, 75, 81, 83, 85-87, 91, and 153.)

## II. The Complaint Fails to State a Claim for Retaliation

Plaintiff argues the Complaint sufficiently alleges that she engaged in "protected activity" because "Plaintiff involved the faculty ombudsman to address her perception that Defendant Rynn was actively hostile towards her as early as February 2019," and "[t]he subsequent termination of Plaintiff's [NIH] grant demonstrates retaliation." (Pl. Resp. at 26.) However, the Complaint contains no additional facts demonstrating that the involvement of the faculty ombudsman in the meeting with Dr. Rynn amounted to protected activity—*i.e.*, opposing conduct that Plaintiff reasonably believed to be unlawful under Title VII, Section 1981, or the ADEA. *See Coleman*, 626 F.3d

8

at 191 ("[T]he complaint does not explain why [the plaintiff's] investigation would be considered protected activity.").

The Complaint contains no facts demonstrating that Plaintiff, through the faculty ombudsman or otherwise, ***communicated*** to Defendants her belief that they were violating Title VII, Section 1981, or the ADEA. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) ("[T]he touchstone is whether the plaintiff's course of conduct as a whole (1) communicates to her employer a belief that the employer has engaged in a form of employment discrimination; and (2) concerns subject matter that is actually unlawful . . . or that the employee reasonably believes to be unlawful."); *Willard v. Indus. Air, Inc.*, 2021 U.S. Dist. LEXIS 17216, *19 (M.D.N.C. Jan. 29, 2021) ("As Willard did not complain of perceived discriminatory conduct, but rather complained about the general unfairness of possible termination, this conversation does not constitute a protected activity under § 1981."); *Phillips v. WakeMed*, 2021 U.S. Dist. LEXIS 200917, *32 (E.D.N.C. Oct. 19, 2021) ("[E]ven if Ms. Phillips had an objectively reasonable belief that she was opposing race discrimination, her complaints to WakeMed did not convey that she was complaining about Title VII conduct. Ms. Phillips did not communicate to WakeMed, directly or indirectly, that any of her disagreements and complaints were based on her race."); *Mixon v. Charlotte-Mecklenburg Schools*, 2011 U.S. Dist. LEXIS

124291, *17 (W.D.N.C. Aug. 5, 2011) ("Title VII requires that employees provide some kind of notice to their employer that they are complaining about prohibited practice covered by the statute."). At most, the Complaint alleges "general workplace grievances" or "[g]eneralized complaints about disputes or annoyances in the workplace" or "general unfairness," which do not constitute protected activity. *See Parker v. Ciena Corp.*, 787 Fed. App'x 817, 820 (2019); *Willard*, 2021 U.S. Dist. LEXIS 17216 at *19; *Mixon*, 2011 U.S. Dist. LEXIS 124291 at *17.

In addition, Plaintiff argues that "Plaintiff's counsel notified Defendants of her claims by letter dated November 12, 2020," that "Plaintiff filed her charges of discrimination on November 30, 2020 which put all Defendants on notice of her allegations," and yet, "[u]ndeterred, on December 18, 2020, . . . Defendants continued their assault on Plaintiff's professional reputation by writing to JAMA, seeking retraction of the article published relating to the REMIT study." (Pl. Resp. at 26-27.) First, these allegations, including Plaintiff's counsel's letter dated November 12, 2020, and Plaintiff's Charge of Discrimination, attached as Exhibits 7 and 8, respectively, to Plaintiff's Response [ECF Nos. 9-7, 9-8], are outside the Complaint and not referred to therein. Therefore, the Court should not consider them. *See Stewart v. Johnson*, 125 F. Supp. 3d 554, 558 (M.D.N.C. 2015) (Under Rule 12(b)(6), "'[a]

10

court may consider . . . documents sufficiently *referred to in the complaint*.'") (quotations and citations omitted) (emphasis added) (Biggs, J.).

Further, even if the Court considers these allegations and documents, Plaintiff's retaliation claim still fails because the Complaint shows that the alleged retaliatory actions would have occurred absent Plaintiff's counsel's letter or the Charge of Discrimination. "[D]iscriminatory conduct that continues unchanged cannot support an inference of retaliatory motivation without some further factual allegations." *Pouncey v. Guilford Cty.*, 2020 U.S. Dist. LEXIS 45886, *33-34 (M.D.N.C. Mar. 17, 2020) (collecting cases). The Complaint and the SCMR's report show that the SCMR's recommendation that the journals in which the REMIT Study results were published be notified of the need for possible corrections and retractions was given on October 21, 2019, over a year prior to Defendants' letter to JAMA in December 2020. (Compl. ¶¶ 105-106, 134-135, Def. Mem. in Supp. Ex. H [ECF No. 6-8].) Dean Klotman issued a letter concurring in the SCMR report's findings and recommendations on November 22, 2019. (*Id.* ¶ 140; Def. Mem. in Supp. Ex. I [ECF No. 6-9].) The CRU issued a summary of its findings concluding that Plaintiff would have to contact the editors of the journals in which the REMIT Study results were published on January 27, 2020. (*Id.* ¶ 143; Def. Mem. in Supp. Ex. J [ECF No. 6-10].) Dean Klotman issued her response to Dr. Jiang's appeal, upholding the

11

corrective actions imposed by the CRU on May 29, 2020. (*Id.* ¶ 148.)

All of these purportedly retaliatory actions undisputedly took place ***before*** Plaintiff's counsel's letter dated November 12, 2020 and Plaintiff's Charge of Discrimination. Thus, there can be no causal link between Plaintiff's alleged protected activities and the alleged adverse actions. *See Pouncey*, 2020 U.S. Dist. LEXIS 45886 at *37 (collecting cases) ("When a plaintiff alleges that conduct occurring prior to plaintiff's protected activity continued unchanged, and provides no other facts supporting an inference of retaliatory intent in ongoing acts, there can be no reasonable inference of retaliatory motive.").

### III. <u>Plaintiff's Claim for Conspiracy under Section 1985 and Proposed Claim for Failure to Prevent Acts of Conspiracy under Section 1986 Fail</u>

Plaintiff's arguments as to why her conspiracy claim under Section 1985 should not be dismissed are unclear. She asserts that this claim is "not defeated" by the intracorporate immunity doctrine, yet she fails to explain why. (Pl. Resp. at 28-29.) While she asserts that the Complaint's allegations show "efforts by Defendants Rynn and others to join together in their acts to discriminate against Plaintiff," (Pl. Resp. at 29-30), she fails to explain why these alleged agreements fall outside the intracorporate immunity doctrine, under which two agents of the same principal cannot form a conspiracy. *See Fox v. City of Greensboro*, 807 F. Supp. 2d 476, 499 (M.D.N.C. 2011).

12

Similarly, Plaintiff asserts that she "has alleged or ***can amend*** her Complaint to allege that the audits were not "independent parallel actions." (Pl. Resp. at 30 [emphasis added].) Yet, Plaintiff fails to specify what facts she has alleged (or could allege) to exclude the reasonable conclusion that the multiple investigations into her research, conducted by multiple independent compliance bodies, were simply parallel conduct by bodies focused on the same body of evidence. Absent such allegations, a bare, conclusory allegation of conspiracy is insufficient to withstand Rule 12(b)(6) scrutiny. *See Davis v. Blanchard*, 2016 U.S. Dist. LEXIS 40100, \*17 (M.D.N.C. Mar. 28, 2016).

However, Plaintiff's conspiracy claim suffers from a more fundamental flaw: she has not alleged any violation of her rights under the federal civil rights statutes, and specifically, has not alleged that any of the alleged actions by Defendants were motivated by discriminatory animus. *See Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009) ("To plead a violation of § 1985, the plaintiffs must demonstrate with specific facts that the defendants were motivated by a specific class-based, invidiously discriminatory animus.") (quotations and citations omitted); *Bass*, 324 F.3d at 765 ("Bass' section 1985(3) claim fails because none of her allegations make out an injury to any right she possessed.").

For the same reasons, Plaintiff's proposed amendment of her Complaint

13

to assert a claim against Dean Klotman under 42 U.S.C. § 1986 for her failure to "prevent the conspirators from acting," (Pl. Resp. at 30), is equally without factual basis. Absent sufficient allegations that a conspiracy existed under Section 1985, there can be no claim for failure to prevent acts in furtherance of one under Section 1986. *See Hammary v. Soles*, 2013 U.S. Dist. LEXIS 40033, *24-25 (M.D.N.C. Mar. 22, 2013) ("Because [a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985, and because Mr. Hammary's § 1985 claims should be dismissed for reasons discussed *supra*, the Court concludes that his § 1986 claims should be dismissed as well.") (quotations and citations omitted); *see also Strickland v. United States*, __ F.4th __, 2022 U.S. App. LEXIS 11309, *119 (4th Cir. Apr. 26, 2022) ("Section 1986 claims are therefore derivative of § 1985 violations.") (quotations and citation omitted).

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss should be granted, and the Complaint should be dismissed with prejudice.

This the 23rd day of May, 2022.

          MORNINGSTAR LAW GROUP

          /s/ Harrison M. Gates
          Harrison M. Gates
          N.C. State Bar. No. 43793
          hgates@morningstarlawgroup.com
          700 W. Main St.
          Durham, NC 27701
          Telephone: (919) 590-0364

          Amie Flowers Carmack
          N.C. State Bar No. 21970
          acarmack@morningstarlawgroup.com
          421 Fayetteville St., Suite 530
          Raleigh, NC 27601
          Telephone: (919) 590-0370

          *Attorneys for Defendants*

# CERTIFICATE OF WORD COUNT AND COMPLIANCE WITH LOCAL RULE 7.3

The undersigned hereby certifies that the foregoing Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) consists of 3,121 words, exclusive of the caption, signature lines, and certificate of service, and complies with Local Rule 7.3(d).

This the 23rd day of May, 2022.

                                                  MORNINGSTAR LAW GROUP

                                                  /s/ Harrison M. Gates
                                                  Harrison M. Gates
                                                  N.C. State Bar. No. 43793
                                                  hgates@morningstarlawgroup.com
                                                  700 W. Main St.
                                                  Durham, NC  27701
                                                  Telephone: (919) 590-0364

                                                  *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Reply Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) was this day served by filing the document electronically via the CM/ECF system, which will send notification of such filing to the following recipients:

    Valerie Bateman
    NEW SOUTH LAW FIRM
    209 Lloyd Street, Suite 350
    Carrboro, NC 27510
    valerie@newsouthlawfirm.com

    June Allison
    NEW SOUTH LAW FIRM
    233 Laurel Avenue
    Charlotte, NC 28207
    june@newsouthlawfirm.com

This the 23rd day of May, 2022.

                MORNINGSTAR LAW GROUP

                /s/ Harrison M. Gates
                Harrison M. Gates
                N.C. State Bar. No. 43793
                hgates@morningstarlawgroup.com
                700 W. Main St.
                Durham, NC 27701
                Telephone: (919) 590-0364

                *Attorneys for Defendants*