# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WEI JIANG, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CV101 |
| | ) | |
| DUKE UNIVERSITY, DUKE UNIVERSITY HEALTH SYSTEMS, MOIRA RYNN, M.D., in her individual and official capacity, and MARY E. KLOTMAN, in her individual and official capacity, | ) ) ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff Wei Jiang, M.D., initiated this action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 1981; and 42 U.S.C. § 1985. Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5.) This motion has been jointly filed by all Defendants, that is, Defendants Duke University, Duke University Health Systems, Moira Rynn, M.D., and Mary E. Klotman ("Defendants"). Defendants' motion seeks to dismiss all claims against them. For the reasons stated herein, Defendants' motion will be granted.

## I. BACKGROUND

According to the Complaint, Plaintiff is a female medical doctor and researcher who is of Chinese national origin and over the age of 40. (*Id.* ¶ 17; *id.* at 59 ¶ 15.) Plaintiff has worked

for Defendants Duke University and Duke University Health Systems since 1989, (*id.* ¶ 14), and has been a full tenured professor at Duke since 2014, (*id.* ¶ 15). As of 2017, Plaintiff had a salary of over $200,000 and was responsible for managing a research laboratory that conducted clinical studies funded by federal grants. (*Id.* ¶¶ 17, 27.)

At an earlier point in Plaintiff's career, during a period of five years from 2006 to 2011, Plaintiff worked on a research study involving patients called the "Responses of Myocardial Ischemia to Escitalopram Treatment" or "REMIT" study. (*Id.* ¶ 18.) Based on this study, Plaintiff wrote several scientific papers, including a paper published in a 2013 issue of the Journal of the American Medical Association ("JAMA"). (*Id.* ¶¶ 24–25.)

In April 2018, Defendant Rynn, as Chair of the Duke Psychiatry and Behavioral Science Department and Plaintiff's supervisor, initiated a departmental audit of Plaintiff's REMIT study. (*Id.* ¶¶ 8, 30, 43.) Around the same time, Defendant Rynn also initiated a second audit of the study to be conducted by an institutional audit office. (*Id.* ¶¶ 43, 46.) These audits began an approximately two-year sequence of additional audits and re-analysis of the REMIT study, all conducted by various committees at Duke. (*See id.* ¶¶ 56, 66, 82, 94, 101–05, 119–20, 134, 142.)

While the scrutiny of the REMIT study was ongoing, Plaintiff's salary was reduced to $34,418. (*Id.* ¶ 32.) Additionally, Defendant Rynn terminated a federal research grant that Plaintiff had won, (*id.* ¶¶ 83–92, 103), advised Plaintiff not to travel to China for work while there was a pending investigation and later refused to approve a request by Plaintiff to travel, (*id.* ¶¶ 93–100, 136), declined to recommend Plaintiff for a new position at Duke, (*id.* ¶¶ 107–15), and, in 2021, instructed Duke's Director of the Psychiatry Department Clinical Research Unit to send a letter to the editors of JAMA regarding issues with the study, (*id.* ¶¶ 69, 154).

2

Late in this sequence of events, Defendant Klotman, the Dean of the Duke University Medical School and Defendant Rynn's supervisor, also became involved insofar as she reviewed the findings of the Duke committees and supported Defendant Rynn's decisions with respect to Plaintiff. (*Id.* ¶¶ 140, 148.)

Based on these allegations, Plaintiff has brought the present suit alleging discrimination based on her race, national origin, color, sex, and age, as well as retaliation for opposing such discrimination, in violation of Title VII, the ADEA, and 42 U.S.C. § 1981, and alleging a conspiracy to violate her civil rights in violation of 42 U.S.C. § 1985. (*Id.* at 59–61.)

## II. STANDARD OF REVIEW

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the complaint satisfies the pleading standard under Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)). A claim is plausible when the complaint alleges sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The court "view[s] the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, "a [district] court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

3

**III. DISCUSSION**

The Court will first address Plaintiff's claims for discrimination under Title VII, the ADEA, and under § 1981. The Court will then address Plaintiff's claims for retaliation under the same three statutes. Then, the Court will turn to Plaintiff's claim under § 1985.

**A. Title VII**

Title VII provides that it is an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Here, Plaintiff pursues her Title VII claim under a disparate treatment theory as well as under a hostile work environment theory. Defendants argue that Plaintiff's case fails under both theories because she has not pled any facts that would support an inference that any adverse employment action she suffered was taken on account of her membership in a protected class. The Court addresses each theory in turn.

1. <u>Disparate Treatment</u>

If, as here, a plaintiff does not have direct evidence of employment discrimination on account of her membership in a protected class, she may plead a prima facie case of discrimination based on evidence of disparate treatment. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012); *see also Gass v. Nguyen*, No. 19-CV-197, 2020 WL 881305, at *2 (W.D.N.C. Feb. 21, 2020) ("At the motion to dismiss stage, [a] plaintiff must allege sufficient facts to allow the [c]ourt to find either that plaintiff pleaded a direct case or that plaintiff pleaded a prima facie case." (citing *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 818 (E.D. Va. 2016))). "[T]he elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2)

satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190.

Initially, the Court finds that Plaintiff has plausibly alleged facts that satisfy the first three elements of a prima facie case of a disparate treatment claim under Title VII based on her race, color, sex, and national origin. For membership in a protected class, according to Plaintiff's allegations, Plaintiff is a Chinese woman who visited her family in China on an annual or bi-annual basis prior to the events recounted in the Complaint. (ECF No. 1 ¶ 16; *id.* at 59 ¶ 15.) Next, for satisfactory job performance, Plaintiff alleges that she had "a strong reputation as a researcher, collaborator, and presenter." (*Id.* ¶ 17.) Plaintiff has also made specific and detailed allegations about both her clinical and academic work that, taken in the light most favorable to her, demonstrate this strong reputation. (*See id.* ¶¶ 17–25.) Finally, the Court also finds that Plaintiff has plausibly alleged that she suffered adverse employment actions consisting of having her salary reduced by over 75%, (*id.* ¶¶ 27, 32), having a grant terminated where that grant would have helped fund her salary, (*id.* ¶¶ 17, 83–84, 103), being prohibited from conducting research, (*id.* ¶¶ 117, 128, 143), and being actively discouraged from applying for a promotion, (*id.* ¶¶ 107–15). *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (listing "decrease in pay or benefits," "loss of job title or supervisory responsibility," and "reduced opportunities for promotion" as "typical" allegations showing "adverse employment action").[1]

---

[1] Plaintiff also argues that the audits of her research were adverse employment actions. (ECF No. 9 at 18.) However, the weight of authority is against treating investigations as adverse employment actions under Title VII. *Dawson v. Rumsfeld*, No. 05-CV-1270, 2006 WL 325867, at *6 (E.D. Va. Feb. 8, 2006) ("[I]t is evident that the mere decision to initiate an investigation is not an adverse employment action."); *Hoffman v. Balt. Police Dep't*, 379 F. Supp. 2d 778, 792 (D. Md. 2005) ("The few courts that have considered whether an investigation, *by itself*, can constitute an adverse employment action have answered that question in the negative.").

For the fourth element of a disparate treatment claim, however, the Court finds that Plaintiff has not plausibly pled that she suffered any of these adverse actions on account of her race, color, sex, or national origin because she has not alleged any facts establishing that she was treated differently from other employees outside her protected class.

"[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)).

Here, the Complaint includes many allegations such as "[there were] no other such audits of researchers similarly situated to Plaintiff," (ECF No. 1 ¶ 44), "[there was no] attempt to involve any of the other white and male physicians in the audit process," (*id.* ¶ 68), and "[the adverse action] was unprecedented, and another example of how Plaintiff was treated differently from other researchers who were similarly situated to her except as to race, sex, age, and national origin," (*id.* ¶ 85). These allegations, however, do not plausibly plead the fourth element of a disparate treatment claim because they merely recite the element in a conclusory fashion rather than state facts to satisfy it. *See Clark v. Guilford County*, No. 16-CV-1087, 2017 WL 4357451, at *5 (M.D.N.C. Sept. 30, 2017) (dismissing Title VII race discrimination claim because allegation that "non-Hispanic employees . . . were never treated in a way comparable to, or worse than, the manner in which plaintiff was treated" was a "threadbare recital" of an element of the cause of action). Reviewing the *factual* allegations, the Court finds that the Complaint does not specifically identify any individuals whom Plaintiff

claims are appropriate comparators, nor does it state how such individuals were similar, anything regarding such individuals' conduct, or how Defendants treated those individuals. Absent such allegations, the Complaint's assertions of discrimination are mere speculation.

Accordingly, the Court finds that Plaintiff has failed to state a claim for Title VII employment discrimination under a disparate treatment theory.[2] *See Coleman*, 626 F.3d at 190–91 (affirming dismissal of Title VII claim because the complaint "conclusorily allege[d] that [the plaintiff] was terminated based on his race, [but did] not assert facts establishing the plausibility of that allegation").

### 2. Hostile Work Environment

"To state a hostile work environment claim, [a plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

According to Plaintiff, the circumstances that made her work environment hostile were: having her pay cut; her supervisor initiating audits of her research; her supervisor not assisting her when she sought promotions; her supervisor preventing her from traveling to China for work; and her supervisor attempting to have an academic journal retract Plaintiff's

---

[2] Plaintiff also argues that her claim should not be dismissed because she has pled facts that show that Defendants' reasons for taking adverse employment actions were pretextual. (ECF No. 9 at 19.) In employment discrimination cases, "[o]nce a plaintiff establishes a prima facie case, the burden then shifts to the employer to 'produce evidence [of] a legitimate, nondiscriminatory reason [for its action].'" *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)). Then, "[o]nce an employer offers a legitimate, non-discriminatory explanation . . . 'the plaintiff must then have an opportunity to prove . . . that the legitimate reasons offered . . . were a pretext for discrimination.'" *Id.* (quoting *Burdine*, 450 U.S. at 253). Here, the Court need not engage in the pretext analysis because Plaintiff has not established a prima facie case.

7

article. (ECF No. 9 at 24.) Assuming without deciding that these circumstances constitute "harassment," the Court finds that Plaintiff has not alleged facts to show that the actions were taken due to Plaintiff's race or gender. The Complaint contains no allegations that anyone ever remarked on Plaintiff's race or her gender. Moreover, as set out above in the Court's analysis of Plaintiff's claim under the disparate treatment framework, the Complaint does not allege sufficient facts about similarly situated colleagues who were treated differently to support an inference of discriminatory motive. Accordingly, the Court finds that Plaintiff has also failed to state a claim for Title VII employment discrimination under a hostile work environment theory.

Because the Court finds that Plaintiff has not plausibly alleged employment discrimination in violation of Title VII under either a disparate treatment or a hostile work environment theory, the Court will dismiss Plaintiff's Title VII claim.

**B.     ADEA**

"The 'elements of a[n] [ADEA] cause of action,' . . . are the following: the plaintiff is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of [her] age." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) and citing *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006)).

Here, Plaintiff's Complaint does not state what her age is, except that she is "over 40." (ECF No. 1 at 59 ¶ 15, 61 ¶ 26.) The Complaint makes this allegation, that Plaintiff is "over 40," twice. (*Id.* at 59 ¶ 15, 61 ¶ 26.) The Court has reviewed the Complaint specifically for other factual allegations regarding the Plaintiff's age, the age of any other person identified in the Complaint, and any instances where age was mentioned by any person or in any document.

8

There are no such other allegations, only conclusory assertions that Plaintiff was discriminated against because of her age. (*See, e.g.*, *id.* ¶ 91 ("Again, this was discriminatory treatment based on Plaintiff's age, sex, race, and national origin.").) Because Plaintiff has not made *any* factual allegations about age except that she is over the age of 40, the Court finds that she has not plausibly alleged that she experienced any discrimination that was on account of her age.

### C. 42 U.S.C. § 1981

Title 42 U.S.C. § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975). "To state a discrimination claim premised on § 1981, 'a plaintiff must show (1) [her] membership in a protected class; (2) [her] satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment.'" *Beatty v. PruittHealth, Inc.*, No. 21-CV-818, 2022 WL 3681918, at *6 (M.D.N.C. Aug. 25, 2022) (quoting *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th 148, 157 (4th Cir. 2022)).

Notably, the elements of a prima facie claim for employment discrimination in violation § 1981 are the same as those for a prima facie claim for employment discrimination in violation of Title VII. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002). Accordingly, the Court's analysis of Plaintiff's Title VII discrimination claim applies with equal force to Plaintiff's § 1981 discrimination claim, and the Court will dismiss the § 1981 discrimination claim for failure to identify any similarly situated employees outside the protected classes who received more favorable treatment.

### D. Retaliation Claims

"In the Fourth Circuit, courts apply the same standards used in Title VII . . . retaliation claims when evaluating claims arising under the ADEA or § 1981." *Pledger v. UHS-Pruitt Corp.*,

9

No. 12-CV-484, 2013 WL 1751373, at *8 (E.D.N.C. Apr. 23, 2013) (citing *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) and *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238–41 (4th Cir. 1982)), *aff'd* 780 F.3d 582 (4th Cir. 2015). The elements of a prima facie retaliation claim under one of these statutes are: "(1) [the plaintiff] engaged in a protected activity," "(2) [the plaintiff's] employer took an adverse employment action against her," and "(3) there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)).

Here, Defendants argue that Plaintiff has not pled a claim for retaliation because the Complaint does not allege that Plaintiff engaged in any protected activity. (ECF No. 6 at 24.) Defendants also argue that, even if the Complaint did allege that Plaintiff engaged in protected activity, it still does not allege any facts that would allow an inference that any adverse employment actions against Plaintiff were causally connected to the protected activity. (*Id.* at 25.) Plaintiff responds that she did engage in protected activity in the form of reaching out to the faculty ombudsman concerning Defendant Rynn's actions, as well as in the form of notifying Defendants of her discrimination claims by letter dated November 12, 2020, and then filing a charge of discrimination later that month. (ECF No. 9 at 26–27; *see* ECF No. 9-8 (copy of charge).) Plaintiff also argues that because Defendants contacted JAMA regarding the validity of Plaintiff's prior articles after receiving notice of her claims in November 2020, a factfinder could infer a causal connection between the letter and the adverse action based on temporal proximity. (ECF No. 9 at 27–28.)

Because Plaintiff does not allege the existence of the November 12, 2020, letter in her Complaint, the Court addresses only whether Plaintiff has pled a claim for retaliation based

on the allegations relating to the faculty ombudsman and the filed charge. The Court begins by addressing the allegations relating to the faculty ombudsman.

"Protected activities fall into two distinct categories: participation or opposition." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII[, the ADEA, or § 1981], nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Id.*

Plaintiff's Complaint mentions the faculty ombudsman only twice. First, as alleged in the Complaint, Plaintiff requested the faculty ombudsman attend a meeting between Plaintiff and Defendant Rynn that occurred sometime in the spring of 2019 and concerned whether Plaintiff should go on a trip to China while there was an investigation of her study pending. (ECF No. 1 ¶¶ 95–99.) According to the Complaint, after this meeting the ombudsman advised Plaintiff not to go to China, and Plaintiff then agreed to remain at Duke. (*Id.* ¶ 99.)

Second, the Complaint alleges that in winter of 2019 Plaintiff "conferred" with the ombudsman regarding whether she should consult with her original cardiology co-investigators about a re-evaluation of their work. (*Id.* ¶ 141.) The Complaint does not say what the ombudsman's response was on this matter. (*See id.*).

Notably, the Complaint does not allege that Plaintiff requested the ombudsman investigate potential discrimination based on race, national origin, color, sex, or age. Instead, the only reasonable inference as to why Plaintiff reached out to the ombudsman on these two occasions is that Plaintiff sought intervention in a professional dispute regarding how to handle the audits of Plaintiff's research. The Court therefore finds that Plaintiff contacting

11

the faculty ombudsman and arranging for him to attend a meeting between herself and Defendant Rynn did not constitute protected activity.

The Court turns next to whether Defendants unlawfully retaliated against Plaintiff for filing a charge of discrimination in November 2020. Initially, the Court finds that filing the charge was protected activity. Reading the Complaint liberally, the Court also finds that the Complaint alleges that on an unspecified date in 2021 Defendant Rynn caused Duke's Director of the Psychiatry Department Clinical Research Unit to send a letter to the editors of JAMA expressing concerns regarding the article that Plaintiff had previously published in that journal.[3] (ECF No. 1 ¶ 154). Assuming without deciding that sending the letter to JAMA was an adverse employment action, the Court nevertheless finds that that there are no allegations in the Complaint that support the existence of a causal link between the filing of the charge and the sending of the JAMA letter.

When a plaintiff alleges retaliation, "[c]ausation can be shown in two ways: by 'showing that the adverse act bears sufficient temporal proximity to the protected activity,' or by showing 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or a combination of the two." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022) (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)). Here, Plaintiff pursues a pure temporal proximity argument. (*See* ECF No. 9 at 27.) "Temporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Laurent-Workman*, 54 F.4th at 218 (quoting

---

[3] The Complaint refers to a communication sent by the Director of the Psychiatry Department Clinical Research Unit at Duke to JAMA in "2021." (ECF No. 1 ¶ 154.) Plaintiff's brief refers to a letter to JAMA from this same individual dated "December 18, 2020," and also attaches a copy of this December 2020 letter. (ECF No. 9 at 26–27; ECF No. 9-10.) There is no mention of the December 2020 letter in Plaintiff's Complaint. Because the Complaint does not allege the existence of the December 2020 letter, the Court disregards it, and accepts as true only that there was a letter in 2021.

12

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "Although there is no 'bright line rule' for when temporal proximity helps or hurts a cause of action for retaliation," even a two-month gap is enough to significantly weaken an inference of causation. *Id.*

Three things prevent the Court from accepting Plaintiff's argument that the two events were in close enough temporal proximity to infer causation.

First, the Complaint does not allege when in 2021 the letter to JAMA was sent. Therefore, the Court lacks enough information to assess how much time passed between Plaintiff's filing her charge and the JAMA letter.

Second, according to the Complaint, the audits of Plaintiff's study, and many other actions she has identified as adverse, began as early as April 2018. (ECF No. 1 ¶ 30.) However, Plaintiff did not file her charge of discrimination until November 2020. (ECF No. 9-8.) On these facts, the Court cannot infer causation due to the rule that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

Finally, third, the Complaint alleges that in October 2019, the Duke Standing Committee on Research Misconduct issued a recommendation that "[t]he managing editors of . . . 2013 JAMA . . . publications should be contacted with the known information about the reporting of [Plaintiff's] study conduct and results to determine if corrections and/or retractions may be needed." (ECF No. 1 ¶¶ 134–35.) Later, in April 2020, Plaintiff appealed restrictions that had been placed on her activities following the October 2019 recommendations, and in May 2020 the Dean of the Duke University Medical School affirmed

13

her support for the recommendations. (*Id.* ¶ 148.) This sequence of events demonstrates that the matter of contacting JAMA had been pending for some time prior to Plaintiff filing her charge of discrimination, which prevents the inference that the filing of the charge caused Defendants to contact JAMA.

For the foregoing reasons, the Court finds that Plaintiff has not stated a claim for retaliation under Title VII, the ADEA, or § 1981.

### E.  42 U.S.C. § 1985

"Section 1985 creates a private cause of action for conspiracies to violate individuals' civil rights." *Rockwell v. Mayor & City Council of Balt.*, No. CIV.A. 13-3049, 2014 WL 949859, at *9 (D. Md. Mar. 11, 2014). It contains three distinct subsections. 42 U.S.C. § 1985. Although Plaintiff's Complaint does not state which subsection she proceeds under for Count III, in her brief in opposition to the motion to dismiss she identifies § 1985(3) as the basis for this count. (ECF No. 9 at 28.) To state a claim under 42 U.S.C. § 1985(3), a plaintiff must plausibly plead:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). Moreover, to succeed on a § 1985(3) claim, a plaintiff "must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." *Id.* (quoting *Simmons*, 47 F.3d at 1377). The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in

14

a merely conclusory manner, in the absence of concrete supporting facts." *Id.* (quoting *Simmons*, 47 F.3d at 1377).

Defendants make three arguments why Plaintiff has not pled a § 1985(3) claim. First, Defendants argue that Plaintiff's § 1985(3) asserts only violations of her civil rights asserted in her other claims; therefore, to the extent she failed to plead facts showing discrimination for those claims, her § 1985(3) claim fails as well. (ECF No. 6 at 25–26.) Second, Defendants argue that Plaintiff has not pled any facts demonstrating a conspiracy (i.e., an agreement or a meeting of the minds as opposed to mere parallel conduct) to violate her civil rights between Defendants. (*Id.* at 26.) Third, Defendants argue that the intracorporate immunity doctrine bars a conspiracy claim here because the two individual Defendants (Defendants Rynn and Klotman) are both employees of Defendants Duke University and Duke University Health System. (*Id.* at 27–28.)

Plaintiff responds that "[the] allegations that Defendants Rynn and Klotman conspired against her is not defeated by [the intracorporate immunity] doctrine," (ECF No. 9 at 28), that the allegations in her Complaint satisfy the elements of a § 1985(3) claim, (*id.* at 29), and that any inadequacies in her Complaint can be cured by amendments, (*id.* at 30). Notably, Plaintiff does not present any argument explaining why the intracorporate immunity doctrine does not defeat her claim, nor does she cite any specific allegations that she argues satisfy specific elements of her claim. (*See id.* at 28–30.) Plaintiff also does not identify any specific factual allegations that she would add to her Complaint if allowed to amend it.[4] (*See id.* at 30.)

---

[4] Plaintiff proposes three amendments: (1) to add "alle[gations] that Defendant Rynn conspired with specific individuals in violation of section 1985" and "alleg[ations] that [the adverse actions] were not 'independent, parallel actions . . .' as argued by Defendants"; (2) to add a § 1986 claim against Defendant Klotman for failure to prevent a § 1985(3) conspiracy; and (3) to delete conspiracy claims against the Duke Defendants. (ECF No. 9 at 30.) Neither the second suggestion nor the third

15

The Court finds that Plaintiff has not pled a § 1985(3) claim.

"[U]nder the intracorporate immunity doctrine, acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." *ePlus Tech. Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). There are two exceptions to the intracorporate immunity doctrine. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353 (4th Cir. 2013). "First, it is generally inapplicable 'where a co-conspirator possesses a personal stake independent of his relationship to the corporation." *Id.* (quoting *ePlus Tech*, 313 F.3d at 179). "Second, a plaintiff may state a conspiracy claim where the agent's acts were not authorized by the corporation." *Id.* (citing *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985)). In this case, Plaintiff has not argued that either of these intracorporate immunity exceptions applies. (ECF No. 9 at 28–30.)

Here, the Court first finds that the intracorporate immunity doctrine bars part of Plaintiff's claim, but not all of it. Plaintiff has identified the four Defendants—Duke University, Duke University Health System, Rynn, and Klotman—as conspirators. (ECF No. 1 at 61 ¶¶ 26–30.) However, while the Complaint specifically alleges that Defendant Rynn worked for Defendant Duke University and for Defendant Duke University Health System, the Complaint is nonspecific regarding Defendant Klotman's employer—it alleges only that she was the "Dean of the Duke University Medical School" and was "responsible for the supervision and management of Defendant Rynn and Plaintiff." (*Id.* ¶¶ 8–9.) The Complaint also does not clearly set out the legal relationship between Defendants Duke University and Duke University Health System. (*See* ECF No. 1 ¶¶ 5–12.) Based on these allegations, the

---

suggestion would save any part of an inadequate § 1985 claim, and the first suggestion is too vague for the Court to evaluate.

16

Court finds that the intracorporate immunity doctrine prevents Defendant Rynn from conspiring with either Defendant Duke University or Defendant Duke University Health System. However, there are insufficient facts alleged in the Complaint for the Court to find that the doctrine bars any other potential conspiracies among these Defendants.

The Court next turns to whether there are any allegations of concrete facts showing a meeting of the minds between any of the Defendants (other than between Defendant Rynn and her employers). The Court finds that there are none. Disregarding the allegations that link Defendant Rynn to her employers, there are essentially no allegations that any of the Defendants ever interacted with one another. At best, the Complaint alleges that Defendant Klotman sent Plaintiff an email stating that she supported Defendant Rynn's actions, (ECF No. 1 ¶ 148), but this falls short of an allegation that Defendants Klotman and Rynn had a meeting of the minds to violate Plaintiff's rights.

Accordingly, the Court finds that Plaintiff has failed to plausibly allege a claim under § 1985.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (ECF No. 5), is **GRANTED**, and this action is **DISMISSED**.

This, the 22nd day of February 2023.

/s/ Loretta C. Biggs
United States District Judge