IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:22-CV-00101

WEI JIANG, MD,

       Plaintiff,

v.

DUKE UNIVERSITY, DUKE
UNIVERSITY HEALTH SYSTEM,
MORIA RYNN, MD, in her
individual and official capacity, and
MARY E. KLOTMAN, in her
individual and official capacity,

       Defendants.

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION UNDER F.R. CIV. P. 59(e) AND ALTERNATIVELY UNDER F. R. CIV. P. 60(b) AND MOTION TO AMEND

**INTRODUCTION**

The Court should deny Plaintiff Wei Jiang's ("Plaintiff" or "Dr. Jiang") Motion under F. R. Civ. P. 59(e) and Alternatively under F. R. Civ. P. 60(b) [ECF No. 14] ("Motion to Vacate") and Motion to Amend [ECF No. 15] because the proposed Amended Complaint is futile. Plaintiff's additional allegations fail to cure the pleading deficiencies identified in this Court's Memorandum Opinion and Order [ECF No. 12] ("Dismissal Order") that dismissed her original Complaint with prejudice. Accordingly, Plaintiff's claims for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA") fail to state claims upon which relief can be granted, and her post-judgment Motion to Amend should be denied.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**I.    The Facts as Alleged by Plaintiff**

Plaintiff's proposed Amended Complaint is largely the same in substance as her original Complaint.[1]   Therefore, the pertinent facts as alleged by

---

[1] For the Court's convenience, Defendants have attached as Exhibit A to this memorandum a comparison document showing all revisions the proposed Amended Complaint makes to the original Complaint.

1

Plaintiff in the proposed Amended Complaint are essentially unchanged from those recited in Defendants' previously filed Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) [ECF No. 6] and in the Court's Dismissal Order.[2] Rather than restate those facts in their entirety, Defendants will summarize the most pertinent factual allegations.

Dr. Jiang is a female Professor of Psychiatry and Behavioral Sciences at Duke University Medical Center, who is of Chinese national origin and over the age of 40. (Am. Compl. ¶¶ 14, 17 & 15 at pp. 63-64 [ECF No. 15-1]) During the period of 2006 to 2011, she worked on a research study called the "Responses of Myocardial Ischemia to Escitalopram Treatment" or "REMIT" study. (*Id.* ¶ 18) Based on this study, Plaintiff co-authored several scientific papers, including a paper published in a 2013 issue of the Journal of the American Medical Association ("JAMA"). (*Id.* ¶¶ 23-24)

In April 2018, Defendant Moira Rynn, M.D. ("Dr. Rynn"), as Chair of the Duke University Psychiatry and Behavioral Science Department, initiated a departmental audit of the REMIT study. (*Id.* ¶¶ 8, 29-30, 45) This began an approximately two-year period of additional audits, investigations, and re-analysis of the REMIT study conducted by various internal committees and

---

[2] Defendants present these allegations as true only for purposes of the Motion to Vacate and Motion to Amend. *See Tabb v. Bd. of Educ.*, 2019 U.S. Dist. LEXIS 25596, *5-6 (M.D.N.C. Feb. 19, 2019).

bodies within Duke.  (*Id.* ¶¶ 45-167)  Plaintiff alleges that as a result of the investigations into the REMIT study, she suffered various adverse and retaliatory employment actions, including: (1) her salary was reduced; (2) a federal research grant she won was terminated; (3) Dr. Rynn advised her that she should not travel to China while the REMIT study investigation was pending and later refused to approve a request by Plaintiff to travel; (4) Dr. Rynn declined to recommend Plaintiff for a new position at Duke; and (5) Dr. Rynn instructed Duke's Director of the Psychiatry Department Clinical Research Unit to send a letter to the editors of JAMA regarding the findings of the REMIT study investigation.  (*Id.* ¶¶ 32, 89-107, 112, 130-138, 150, 154) During the final stages of the investigation and audit process, Defendant Mary E. Klotman ("Dean Klotman"), as Dean of the Duke University Medical School, reviewed the findings of the various Duke committees and upheld their recommendations and decisions related to Plaintiff.  (*Id.* ¶¶ 154, 166).

## II. **Procedural History**

Based on these allegations, Plaintiff brought this action alleging discrimination and retaliation based on race, national origin, color, sex, and age and also alleging retaliation in violation of Title VII, the ADEA, and 42 U.S.C. § 1981.[3]  Defendants moved to dismiss Plaintiff's original Complaint in

---

[3] Plaintiff's original Complaint also included claims for conspiracy to violate

3

its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Motion to Dismiss [ECF No. 5])

On February 22, 2023, this Court issued its Dismissal Order holding that Plaintiff failed to plausibly allege employment discrimination or retaliation under Title VII, the ADEA, or Section 1981 and granting Defendants' Motion to Dismiss in its entirety without leave to amend. (Dismissal Order at 17). Specifically, the Court held that: (1) Plaintiff's discrimination claims failed because the original Complaint failed to plausibly allege that she was treated differently from other employees outside of her protected classifications; and (2) Plaintiff's retaliation claims failed because the original Complaint failed to plausibly allege a causal link between any alleged protected activity and any alleged adverse actions. (*Id.* at 4-14) On the same day, the Court entered a final Judgment granting Defendants' Motion to Dismiss and dismissing this action in its entirety. (Judgment [ECF No. 13])

On March 22, 2023, Plaintiff filed her Motion to Vacate and Motion to Amend asking that the Court vacate the Judgment and allow her to seek leave to file her proposed Amended Complaint, which she claims cures the pleading deficiencies of her original Complaint. (Motion to Vacate at 2-3; Motion to

---

her civil rights in violation of 42 U.S.C. § 1985. However, Plaintiff has not included those claims in her proposed Amended Complaint, thus they are not addressed in this Memorandum.

Amend ¶¶ 8-12).

## QUESTION PRESENTED

Should the Court vacate the final Judgment entered in this action under Fed. R. Civ. P. 59(e) or 60(b) and grant Plaintiff leave to file her proposed Amended Complaint in this action under Fed. R. Civ. P. 15(a)(2)?

## STANDARD OF REVIEW

The Court's Dismissal Order did not grant Plaintiff leave to amend and was promptly followed by entry of the final Judgment dismissing this action. Therefore, the Dismissal Order and Judgment constitute a final order, as opposed to an interlocutory order.[4] *See Britt v. Dejoy*, 45 F.4th 790, 796 (4th Cir. 2022). Accordingly, prior to considering Plaintiff's post-judgment Motion to Amend, the Court would have to vacate its prior Judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b). *See Calvary Christian Ctr. v. City of Fredericksburg*, 710 F.3d 536, 539 (4th Cir. 2013); *Chapivian v Fennec Pharms, Inc.*, 2023 U.S. Dist. LEXIS 34954, *15 (M.D.N.C. Feb. 15, 2023).

---

[4] This Court's opinion in *Hill v. AQ Textiles, LLC*, 582 F. Supp. 3d 297 (M.D.N.C. 2022), cited in Plaintiff's Motion to Vacate, correctly stated the standard at that time for determining whether an order dismissing a complaint is a final order. However, the Fourth Circuit overruled that standard and adopted a new one shortly thereafter. *See Britt*, 35 F.4th at 796. Nevertheless, as the Court recognized in *Hill*, whether a dismissal order is considered final or interlocutory has little practical effect on the governing standard where a plaintiff seeks leave to amend. *See Hill*, 582 F. Supp. 3d at 307 n.3.

5

"'To determine whether vacatur is warranted, however, the court need not concern itself with either of [Rules 59(e) or 60(b)'s] legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a).'" *Chapivian*, 2023 U.S. Dist. LEXIS 34954 at *15 (quoting *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)); *see also Midgett v. Cooper*, 2022 U.S. Dist. LEXIS 231327, *5 (M.D.N.C. Mar. 23, 2022) ("[W]here a motion to alter judgment seeks to set aside the judgment of dismissal and, at the same time, to file an amended complaint, the court need only ask whether the amendment should be granted under Federal Rule of Civil Procedure 15."). "'In other words, a court should evaluate a postjudgment motion to amend the complaint under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility.'" *Chapivian*, 2023 U.S. Dist. LEXIS 34954 at *15 (quotations omitted).

A motion to amend should be denied as futile where the proposed amended complaint cannot withstand a motion to dismiss under Rule 12(b)(6). *Id.* at *16-17 (citations omitted). Accordingly, the proper standard for deciding Plaintiff's Motion to Vacate and Motion to Amend is the Rule 12(b)(6) standard as previously set forth in the Court's Dismissal Order and in Defendants' memoranda in support of their Motion to Dismiss the original Complaint.

## ARGUMENTS AND AUTHORITIES

**I.** **Plaintiff's Proposed Amended Complaint Fails to Cure the Pleading Deficiencies in Her Discrimination Claims**

As the Court recognized in its Dismissal Order, Plaintiff's claims for employment discrimination under Title VII, the ADEA, and Section 1981 all are subject to the same standard. *Wei Jiang v. Duke Univ.*, 2023 U.S. Dist. LEXIS 28914, *12 (M.D.N.C. Feb. 22, 2023); *see also Pledger v. UHS-Pruitt Corp.*, 2013 U.S. Dist. LEXIS 57817, *25 (E.D.N.C. Apr. 22, 2013) ("In the Fourth Circuit, courts apply the same standards used in Title VII discrimination or retaliation claims when evaluating claims arising under the ADEA or § 1981.").

Like the original Complaint, the proposed Amended Complaint alleges no direct evidence of discrimination (and Plaintiff does not argue otherwise). None of Plaintiff's new allegations include "'conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'"[5] *See Clements v. Town of Sharpsburg,*

---

[5] The proposed Amended Complaint alleges that "Plaintiff's husband was recently informed that Defendants had providing [sic] information to government authorities indicating the Plaintiff had 'retired,'" which Plaintiff alleges is "indicative of Defendants' discriminatory treatment of Plaintiff based on her age." (Am. Compl. ¶ 175) Inquiries or comments about an employee's "retirement" status are not direct evidence of age discrimination. *E.g., Lutz v.*

2019 U.S. Dist. LEXIS 175926, *5-6 (E.D.N.C. Oct. 10, 2019) (quotations and citation omitted). Therefore, Plaintiff only can state a valid claim by pleading a *prima facie* disparate treatment or hostile environment case. *See Jiang*, 2023 U.S. Dist. LEXIS 28914 at *5.

## A. The Proposed Amended Complaint Fails to Cure the Defects in Plaintiff's Disparate Treatment Claims

This Court held that the original Complaint's claims for disparate treatment under Title VII, the ADEA, and Section 1981 failed because "Plaintiff has not plausibly pled that she suffered any of these adverse actions on account of her race, color, sex, or national origin because she has not alleged any facts establishing that she was treated differently from other employees outside her protected class." *Jiang*, 2023 U.S. Dist. LEXIS 28914 at *7, 11, 12. "'[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their

---

*Liquidity Servs.*, 2022 U.S. Dist. LEXIS 224370, *14-15 (D. Md. Dec. 12, 2022); *Palmer v. Liberty Univ., Inc.*, 2021 U.S. Dist. LEXIS 236875, *16-17 (W.D. Va. Dec. 10, 2021). Even if the alleged statement by Defendants could show discriminatory animus, Plaintiff fails to allege any facts plausibly linking these comments to the adverse employment actions she alleges, all of which already had occurred at the time of this alleged comment. *See Wilson v. UNC Health Care Sys.*, 2020 U.S. Dist. LEXIS 177326, *24 (M.D.N.C. Sept. 28, 2020).

8

conduct or the employer's treatment of them for it.'" *Id.* at *7-8 (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019)) (quotations omitted). The Court held that the original Complaint "does not specifically identify any individuals whom Plaintiff claims are appropriate comparators, nor does it state how such individuals were similar, anything regarding such individuals' conduct, or how Defendants treated those individuals." *Id.* at *8-9.

Plaintiff argues that her proposed Amended Complaint cures these pleading deficiencies by "alleg[ing] the specific names of other similarly situated researchers at Duke . . . who were audited within the department, but not subjected to multiple external audits." (Motion to Amend ¶ 8) However, the new allegations in the Amended Complaint consist of further conclusory assertions, devoid of any well-pled facts identifying specific comparators who are similarly situated to Plaintiff. Plaintiff's new allegations purportedly identifying valid comparators consist of the following:

- "Plaintiff's salary was reduced to $34,418.00, where it has remained since that time, <span style="color:red; text-decoration:underline">despite the fact that other non-Asian, male, and younger physicians have been hired by Defendants since that time at much higher salaries for comparable work.</span>"[6] (Am. Compl. ¶ 32 at p. 11)

- "In the most three most recent annual appointment letters

---

[6] Redline font indicates revisions and additions made to the allegations of the original Complaint by the proposed Amended Complaint.

9

provided to Plaintiff by Defendant Rynn, Rynn had no discussion with Plaintiff as opposed to other faculty members, whose names have not yet been discovered, but will be identified as John Doe, Jack Smith, and James LNU, who were similarly situated to Plaintiff but not older, Asian, and female." (Am. Compl. ¶ 33 at p. 12)

- "The difference in the salary paid to Plaintiff and the salary paid to John Doe, Jack Smith, and James LNU is attributable to discrimination based on Plaintiff's race, age, sex, and national origin." (Am. Compl. ¶ 34 at p. 12)

- "No other IRB approved protocols have been terminated in the same manner as Plaintiff's, including white male researchers John Doe, Jack Smith, and James LNU. Plaintiff was singled out by Defendant Rynn and treated differently based on Plaintiff's race, sex, national origin, and age." (Am. Compl. ¶ 93 at p. 31)

- "Despite having reduced Plaintiff's salary to less than $50,000, and restricted her to solely clinical duties, in December 2019, Rynn offered a salary of $220,000/year to a non-Asian younger physician with 90% clinical duties comparable to the duties being performed by Plaintiff at that time." (Am. Compl. ¶ 164 at p.60)

- "Defendants treated other non-white (Asian and Indian descent) department members more favorably than Plaintiff." (Am. Compl. ¶ 20 at p. 64)

- "Defendants treated other male department members more favorably than Plaintiff." (Am. Compl. ¶ 21 at p. 64)

- "Defendants treated other younger department members more favorably than Plaintiff." (Am. Compl. ¶ 22 at p. 64)

- "Defendants treated other non-white / Caucasian (non-Asian and non-Indian descent) employees more favorably." (Am. Compl. ¶ 29 at p. 65)

These additional allegations suffer from the same fatal defects the Court

identified in the original Complaint: they do not "specifically identify any individuals whom Plaintiff claims are appropriate comparators, nor [do they] state how such individuals were similar, anything regarding such individuals' conduct, or how Defendants treated those individuals." *See Jiang*, 2023 U.S. Dist. LEXIS 28914 at *7-8. The additional allegations in Plaintiff's Statement of Facts Paragraphs 32, 20-22, and 29 are the same type of conclusory allegations that this Court already found insufficient in its Dismissal Order. *See id.*; *see also Clark v. Guilford County*, 2017 U.S. Dist. LEXIS 162024, *14 (M.D.N.C. Sept. 30, 2017) (dismissing race discrimination claim because allegation that "non-Hispanic employees . . . were never treated in a way comparable to, or worse than, the manner in which plaintiff was treated" was a "threadbare recital" of an element of the cause of action) (Biggs, J.). They identify no specific comparators and contain no facts as to how those comparators were similarly situated to Plaintiff.

Plaintiff's Statement of Facts Paragraphs 33-34 purport to identify three "other faculty members, whose names have not yet been discovered but will be identified as John Doe, Jack Smith, and James LNU." (Am. Compl. ¶ 33 at p. 12) First, these allegations appear to concede that Plaintiff merely speculates that these unidentified comparators may exist and that she hopes to find them in discovery. Yet, that is precisely the type of fishing expedition that the Rue

11

12(b)(6) standard is intended to prohibit. *See Squire v. Identity, Inc.*, 2022 U.S. App. LEXIS 31945, *4 (4th Cir. Nov. 17, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)) ("The 'doors of discovery' do not unlock 'for a plaintiff armed with nothing more than conclusions.'"). Plaintiff's speculation or professed hope that discovery may afford her a valid comparator is insufficient to cure the deficiencies in her discrimination claims.

Second, these allegations contain no facts showing that the alleged comparators were similarly situated to Plaintiff—*i.e.*, that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *See Jiang*, 2023 U.S. Dist. LEXIS 28914 at *7-8; *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (holding discrimination claim was properly dismissed because "the complaint fails to establish a plausible basis for believing [the white supervisor] and [the plaintiff] were actually similarly situated or that race was the true basis for [the plaintiff's] termination" and "[a]bsent such support, the complaint's allegations of race discrimination do not rise above speculation"); *Marshall v. C & S Rail Servs., LLC*, 2021 U.S. Dist. LEXIS 69204, *44-45 (M.D.N.C. Apr. 9, 2021) ("To the extent that Worthy relies on his allegation that he was terminated under circumstances in which

12

Caucasian employees were not, he has not alleged sufficient facts."); *Clark*, 2017 U.S. Dist. LEXIS 162024 at *14 ("Plaintiff alleges the conclusory assertion that '[n]on-Hispanic employees of defendant were never treated in a way comparable to[,] or worse than, the manner in which plaintiff was treated[.]' She provides no factual support for this conclusory assertion that is merely a 'threadbare recital' of one of the elements of the cause of action.").

A "discriminatory discipline" claim specifically requires allegations that the plaintiff's "prohibited conduct was comparably serious to misconduct by employees outside the protected class" and that "the disciplinary measures taken against her were more harsh than those enforced against other employees." *Prince-Garrison v. Md. Dep't of Health & Mental Hygiene*, 317 Fed. App'x 351, 353-54 (4th Cir. 2009); *see also Vega v. Wake Co. Govt.*, 2015 U.S. Dist. LEXIS 39452, *12-13 (E.D.N.C. Mar. 27, 2015) ("[The plaintiff] recounts at length his version of events that led to written disciplinary reports . . . He does not, however, allege any facts to suggest that the disciplinary measures taken against him were harsher than the discipline imposed on other employees who committed comparable misconduct."); *see also Blakney v. N.C. A&T Univ.*, 2019 U.S. Dist. LEXIS 45794, *47 n.26 (M.D.N.C. Mar. 20, 2019) ("[A] plaintiff must establish facts to allow this court to reasonably infer that the prohibited conduct in which she engaged was comparable in seriousness to

13

misconduct of those outside the protected class.") (citations omitted).

The Amended Complaint fails to allege that any of these pseudonymous comparators engaged in any alleged misconduct or were subject to any disciplinary proceedings at all, much less ones similar to Plaintiff. This is true of both the pseudonymous individuals identified Paragraph 33 at p.12 and the unnamed "non-Asian younger physician" referenced in Paragraph 164 at p. 60. Absent such allegations, Plaintiff's allegations boil down solely to different treatment of individuals outside her protected classifications, which is insufficient to state a claim for discrimination.[7] *See Squire*, 2022 U.S. App. LEXIS 31945 at *4 ("The elimination of her position within the organization— just because it came at Squire's expense as a black employee—is not indicative of racial animus. While her termination may be *consistent* with discrimination, it does not alone support a reasonable inference that the decisionmakers were motivated by bias.") (quotations and citations omitted) (emphasis in original).

Plaintiff also points to other new allegations in the Amended Complaint

_____

[7] Nor are Plaintiff's discrimination claims helped by her new allegation that "[d]uring Rynn's tenure as Dean, she also instigated audits and investigations of two other physicians from India who eventually left employment with Defendants after Rynn's hostile treatment which was excessive in comparison to treatment of similarly situated young, white colleagues." (Am. Compl. ¶ 165 at p. 60) Plaintiff must identify specific comparators *outside* of her protected classifications who were treated *less harshly* under similar circumstances, not individuals who also were subject to audits and happen also to be non-white.

14

which allege "other colleagues who knew of Plaintiff's disparate treatment" who "are listed by name and provide evidence that Plaintiff was treated differently from other individuals who were not her race or ethnicity, and her sex." (Motion to Amend ¶ 9) These allegations consist of the following:

- "James Blumenthal, J.P. Gibbons Distinguished Professor of Psychiatry, confirmed that Rynn's practice of preventing Plaintiff from discussing the audit matters was unusual."[8] (Am. Compl. ¶ 51 at p. 16)

- "Dr. Blumenthal was shocked when he learned that Rynn had cancelled Plaintiff's grant. In the 50 years he has been working, he had never seen such obviously unfair and hostile treatment, especially given the reasons for the cancellation of this grant. He had never heard of this happening to any other colleagues, including non-Asian male younger or any colleagues." (Am. Compl. ¶ 90 at p.30)

- "Blumenthal and other physicians in the psychiatry department had never heard of a physician/researcher being denied time to undertake professional outreach in other countries and could not understand the source of the hostility of Dr. Rynn towards Plaintiff." (Am. Compl. ¶ 108 at p. 36)

- "Dr. Blumenthal and other members of the psychiatry department had never seen a researcher and full professor prohibited from being prohibited from doing research either in her own laboratory or in other laboratories. At this time, due to Rynn's refusal to let Plaintiff be involved in any research work even though no patient safety concerns had ever been identified, Plaintiff was reduced to providing only clinical services, which was unheard of." (Am. Compl. ¶ 141 at p. 51)

  "In fact, Rynn sent word to Blumenthal through his staff that

---

[8] Because these allegations are entirely new, they are not shown in redline font in this memorandum.

Plaintiff was not to be paid for any work on his grants. Blumenthal refused to suspend payments to Jiang. Rynn then directed Blumenthal to keep Jiang away from working with any data." (Am. Compl. ¶ 142 at p. 51)

- "Again, Dr. Blumenthal and other physicians in the Department had never seen such disproportionate sanctions applied and over a difference of opinion about the inclusion/exclusion of subjects in a study and protocols amended due to safety reasons. While other members of the department had noticed that Rynn had targeted other non-White, (of Asian and Indian descent) older male department members, they also noted that she had never gone after anyone to the extent as Plaintiff." (Am. Compl. ¶158 at pp. 58-59)

- "Dr. Blumenthal and others in the department had never observed other physicians, included white male physicians / researchers, be subjected to such treatment." (Am. Compl. ¶ 161 at p. 59)

These allegations suffer from the same deficiencies as those discussed above—they fail to identify any specific comparators who were investigated and disciplined less harshly for similar misconduct under circumstances similar to Plaintiff. Absent such facts, Plaintiff's allegations that another physician shared her belief that the investigation process or the sanctions imposed on Plaintiff were unusual, disproportionate, or harsh does nothing to advance her discrimination claims beyond the allegations of the original Complaint. Plaintiff cannot transform insufficient allegations into sufficient ones by filtering them through the mouth of a "witness."

Accordingly, the proposed Amended Complaint fails to state claims for disparate treatment.

16

**B.    The Proposed Amended Complaint Fails to Cure the Defects in Plaintiff's Hostile Environment Claims**

Plaintiff's hostile environment claims fare no better under the additional allegations of her proposed Amended Complaint.  This Court held that the original Complaint's hostile environment claims failed because "[a]ssuming without deciding that these circumstances constitute 'harassment,' the Court finds that Plaintiff has not alleged facts to show that the actions were taken due to Plaintiff's [protected classifications]."  *See Jiang*, 2023 U.S. Dist. LEXIS 28914 at 10.  As with the disparate treatment claims, the original Complaint failed to "allege sufficient facts about similarly situated colleagues who were treated differently to support an inference of discriminatory motive."  *Id.*

In her Motion to Amend, Plaintiff contends that "[a]s with her disparate treatment claim, Plaintiff's amended complaint provides additional allegations that her colleagues [as] well as the [faculty] ombudsman noticed that the Defendant [sic] was actively and obviously hostile towards her and treated her differently from other individuals in the Department."[9]  (Motion to Amend ¶ 10)  Plaintiff relies on the same allegations set forth above to carry her hostile environment claims.  Accordingly, the proposed Amended Complaint fails to

---

[9] The proposed Amended Complaint in fact contains no new allegations related to the faculty ombudsman.  (*Compare* Orig. Compl. ¶¶ 96-100 at pp. 34-35 and ¶ 141 at pp. 54-55 *with* Am. Compl. ¶¶ 103-107 at p. 35-36 and 155 at p. 57)

state a claim for discrimination based on a hostile environment theory for the same reason it fails to state a claim based on disparate treatment, just as with the original Complaint. *See Jiang*, 2023 U.S. Dist. LEXIS 28914 at 10.

Further, like the original Complaint, the Amended Complaint fails to allege pervasive harassment sufficient to state a claim for a hostile environment. *See Thomas v. East Penn Mfg. Co.*, 2020 U.S. Dist. LEXIS, 133408, *43 (M.D.N.C. July 28, 2020) (To allege a hostile work environment, Plaintiff must allege facts demonstrating that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment and create an abusive working environment."). "[T]he facts she alleges merely tell a story of a workplace dispute . . . and some perhaps callous behavior by her superiors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also Ali v. BC Architects Eng'rs, PLC*, 832 Fed. App'x 167, 172 (2020) (allegations that defendant "repeatedly asked about [the plaintiff's] travels to Turkey; that she was demoted—twice—after those travels; and that, at the time she was fired, an owner commented that she was being terminated, in part, for 'bringing [her] mother's problems' into the workplace" failed to "plausibly allege that such

18

conduct was severe or pervasive enough to alter [the plaintiff's] conditions of employment and create an abusive work environment").

Accordingly, the proposed Amended Complaint fails to state claims for a hostile work environment.

## II. Plaintiff's Proposed Amended Complaint Fails to Cure the Pleading Deficiencies in Her Retaliation Claims

The Court's Dismissal Order identified two forms of alleged protected activity included in the original Complaint. The Amended Complaint leaves the allegations related to these two instances substantially unchanged.

First, the original Complaint alleged that Dr. Jiang reached out to the faculty ombudsman and requested he "attend a meeting between Plaintiff and Defendant Rynn that occurred sometime in the spring of 2019 and concerned whether Plaintiff should go on a trip to China while there was an investigation of her study pending." *See Jiang*, 2023 U.S. Dist. LEXIS 28914 at *14-15. Plaintiff also alleged "that in the winter of 2019 Plaintiff 'conferred' with the ombudsman regarding whether she should consult with her original cardiology co-investigators about a re-evaluation of their work." *Id.* at *15. The Court held these allegations failed to allege protected activity because they did not allege "that Plaintiff requested the ombudsman investigate potential discrimination," but instead indicated "that Plaintiff sought intervention in a professional dispute regarding how to handle the audits of Plaintiff's research."

*Id.*; *see also Willard v. Indus. Air, Inc.*, 2021 U.S. Dist. LEXIS 17216, *19 (M.D.N.C. Jan. 29, 2021) ("As Willard did not complain of perceived discriminatory conduct, but rather complained about the general unfairness of possible termination, this conversation does not constitute a protected activity under § 1981.")

Plaintiff's proposed Amended Complaint adds no new allegations regarding her communications with the faculty ombudsman. (*Compare* Orig. Compl. ¶¶ 96-100 at pp. 34-35 and ¶ 141 at pp. 54-55 *with* Am. Comp. ¶¶ 103-107 at pp. 35-36 and ¶ 155 at pp. 57-58). Accordingly, any retaliation claim based on this alleged activity fails, just as it did before.

Second, Plaintiff alleged that Defendants retaliated against her for filing her Charge of Discrimination with the Equal Employment Opportunity Commission in November 2020 by contacting JAMA at an unspecified date in 2021 regarding the findings of the investigations into the REMIT study. *See Jiang*, 2023 U.S. Dist. LEXIS 28914 at *15-16. The Court held that three reasons prevented it from accepting Plaintiff's allegations of a causal connection between her Charge of Discrimination and Defendants' letter to JAMA. *Id.* at *17. First, the original Complaint did not allege when in 2021 Defendants sent the letter to JAMA. *Id.* Second, the audits of the REMIT study and other adverse actions alleged by Plaintiff began as early as April

2018, but Plaintiff did not file her Charge of Discrimination until November 2020, which precluded any inference of retaliation. *Id.* (citing *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006)). And, third, in October 2019, following its investigation of the REMIT study, the Duke Standing Committee on Research Misconduct issued recommendations, which included that JAMA "should be contacted with the known information about the reporting of [Plaintiff's] study conduct and results to determine if corrections and/or retractions may be needed." *Id.* at *17-18. Plaintiff appealed these recommendations in April 2020, and Dean Klotman upheld them in May 2020. *Id.* at *18. "This sequence of events demonstrates that the matter of contacting JAMA had been pending for some time prior to Plaintiff filing her charge of discrimination, which prevents the inference that the filing of the charge caused Defendants to contact JAMA." *Id.* The Court declined to consider Plaintiff's argument that the original Complaint pleaded protective activity and retaliation based on the letter from Plaintiff's counsel to Defendants dated November 12, 2020, because that letter was not specifically alleged in the original Complaint. *Id.* at *14.

In her Motion to Amend, Plaintiff argues that her proposed Amended Complaint remedies these deficiencies by including the November 12, 2020 letter that was omitted from the original Complaint, "mak[ing] additional

21

allegations about a connection between Plaintiff's allegations of discrimination and the adverse actions taken by Defendants," and "mak[ing] additional allegations regarding the adverse actions taken after Plaintiff filed her charge of discrimination as well especially regarding the sending of the JAMA letter." (Motion to Amend ¶¶ 11-12) Plaintiff's additional allegations in support of her retaliation claims consist of the following:

- "On November 12, 2020, and then on November 20, 2020, when she filed her charge of discrimination, Plaintiff complained about the discriminatory treatment to which Rynn had subjected her."[10] (Am. Compl. ¶ 168 at p. 61)

- "On December 18, 2020, Defendants retaliated against Plaintiff by writing to the editor of JAMA calling into question the legitimacy of the article regarding the REMIT study." (Am. Compl. ¶ 169 at p. 61)

- "The only corrections noted for the JAMA article were typographical in nature."[11] (Am. Compl. ¶ 170 at p. 61)

---

[10] Because these allegations are entirely new, they are not shown in redline font in this memorandum.

[11] As shown by the letter itself, which is attached to the proposed Amended Complaint, this allegation is inaccurate. *See Bankaitis v. Allstate Ins. Co.*, 229 F. Supp. 3d 381, 384 (M.D.N.C. 2017) ("[T]he court need not accept . . . allegations that are contradicted by documents properly designated as exhibits.") (Biggs, J.). The letter informed JAMA that "[a] recent institutional internal review determined that 26 (or 20.5%) of the 127 study participants enrolled in the trial did not meet all inclusion/exclusion criteria specified in the protocol" and that "[a]n independent re-analysis of the study results using data from only those participants who met all inclusion/exclusion criteria showed that some of the results reported in the publication were no longer statistically significant." (Am. Compl. Ex. 2)

22

- "Plaintiff wrote a letter to the editor of JAMA accepting the need for technical corrections and providing a response to Compton's allegations about the inclusion/exclusion criteria." (Am. Compl. ¶ 171 at p. 61)

- "On December 22, 2020, Compton wrote Plaintiff's co-investigators about the JAMA article." (Am. Compl. ¶ 172 at p. 62)

- "On January 21, 2021, on behalf of the co-investigators, Chris O'Connor wrote JAMA questioning the internal methodology used to evaluate the REMIT study, and raising numerous other issues regarding the Defendants' evaluation of the REMIT study." (Am. Compl. ¶ 173 at p. 62)

- "On March 18, 2022, Geeta K. Swamy, M.D. wrote to JAMA again and made allegations that the study did not comply with the protocol initially approved by the IRB. Swamy omitted any mention that the amendment of the protocol was due to safety issues which was specifically allowed by law. She also alleged that there were statistical issues with the data analysis even though the data analysis was based on "intention-to-treat" which does not require evaluation of patient compliance/adherence to inclusion/exclusion criterion after randomization. This allegation demonstrated a fundamental misunderstanding of the intention to treat analysis. Swamy also has much less experience as a researcher than Plaintiff and has a much thinner publication record." (Am. Compl. ¶ 174 at p. 62)

- "JAMA requested Plaintiff respond to Defendants' latest attack on the JAMA article authored by Plaintiff and her co-investigators. On April 18, 2021, Plaintiff updated JAMA on her forthcoming response to Defendants' correspondence regarding the JAMA article." (Am. Compl. ¶ 175 at p. 62-63)

- "On April 19, 2021, Plaintiff provided a fulsome response to Defendants' continued misguided, malicious, discriminatory and retaliatory attacks on the JAMA article." (Am. Compl. ¶ 176 at p. 63)

23

These additional allegations suffer from the exact same problems of sequencing identified in the Court's Dismissal Order. Assuming *arguendo* that these allegations sufficiently allege adverse actions against Plaintiff for purposes of a retaliation claim, those actions already were set in motion prior to the only protected activity identified by Plaintiff—the November 12, 2020 letter and the filing of the Charge of Discrimination on November 20, 2020.

As the Court noted, "the audits of Plaintiff's study and many other actions she has identified as adverse, began as early as April 2018," and Plaintiff sent her letter and filed her Charge of Discrimination on November 20, 2020. *Jiang*, 2023 U.S. Dist. LEXIS 28914 at *17. "On these facts, the Court cannot infer causation due to the rule that '[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff ever had engaged in any protected activity, an inference of retaliation does not arise.'" *Id.* (quoting *Francis*, 452 F.3d at 309); *see also Pouncey v. Guilford Cty.*, 2020 U.S. Dist. LEXIS 45886, *37 (M.D.N.C. Mar. 17, 2020) (collecting cases) ("When a plaintiff alleges that conduct occurring prior to plaintiff's protected activity continued unchanged, and provides no other facts supporting an inference of retaliatory intent in ongoing acts, there can be no reasonable inference of retaliatory motive.").

Further, as the Court recognized, the Duke Standing Committee on

24

Research Misconduct issued its recommendation that JAMA be contacted regarding the findings of the REMIT study investigation in October 2019—over one year prior to Plaintiff's letter and Charge of Discrimination. *Jiang*, 2023 U.S. Dist. LEXIS 28914 at *17-18. That recommendation was upheld by Dean Klotman in May 2020—six months prior to Plaintiff's letter and Charge of Discrimination. *Id.* at *18. "This sequence of events demonstrates that the matter of contacting JAMA had been pending for some time prior to Plaintiff filing her charge of discrimination, which prevents the inference that the filing of the charge caused Defendants to contact JAMA." *Id.*

None of Plaintiff's new allegations in the proposed Amended Complaint changes or alters this sequence of events as alleged in the original Complaint. (*Compare* Orig. Compl. ¶¶ 30 at p. 11, 134-135 at pp. 51-52 and 148 at p. 57 *with* Am. Compl. ¶¶ 30 at p. 11, 148-149 at pp. 54-55, 166 at p. 60-61) Accordingly, the proposed Amended Complaint fails to state claims for retaliation under Title VII, Section 1981, or the ADEA.

Because Plaintiff's proposed Amended Complaint fails to state a claim under Rule 12(b)(6), her Motion to Amend is futile. Therefore, both Plaintiff's Motion to Vacate and Motion to Amend should be denied. *See Chapivian*, 2023 U.S. Dist. LEXIS 34954, *27; *Midgett*, 2022 U.S. Dist. LEXIS 231327 at *9-10.

**<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff's Motion to Vacate and Motion to Amend should be denied.

This the 11th day of April, 2023.

MORNINGSTAR LAW GROUP

<u>/s/ Harrison M. Gates</u>
Harrison M. Gates
N.C. State Bar. No. 43793
hgates@morningstarlawgroup.com
700 W. Main St.
Durham, NC  27701
Telephone: (919) 590-0364

Amie Flowers Carmack
N.C. State Bar No. 21970
acarmack@morningstarlawgroup.com
421 Fayetteville St., Suite 530
Raleigh, NC  27601
Telephone: (919) 590-0370

*Attorneys for Defendants*

## CERTIFICATE OF WORD COUNT AND COMPLIANCE WITH LOCAL RULE 7.3

The undersigned hereby certifies that the foregoing Memorandum in Support of Defendants' the Motion to Dismiss Pursuant to Rule 12(b)(6) consists of 6,112 words, exclusive of the caption, signature lines, ad certificate of service, and complies with Local Rule 7.3(d).

This the 11th day of April, 2023.

MORNINGSTAR LAW GROUP

/s/ Harrison M. Gates
Harrison M. Gates
N.C. State Bar. No. 43793
hgates@morningstarlawgroup.com
700 W. Main St.
Durham, NC 27701
Telephone: (919) 590-0364

*Attorneys for Defendants*

27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum in Support of Defendants' the Motion to Dismiss Pursuant to Rule 12(b)(6) was this day served by filing the document electronically via the CM/ECF system, which will send notification of such filing to the following recipients:

Valerie Bateman
NEW SOUTH LAW FIRM
209 Lloyd Street, Suite 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com

June Allison
NEW SOUTH LAW FIRM
233 Laurel Avenue
Charlotte, NC 28207
june@newsouthlawfirm.com

This the 11th day of April, 2023.

MORNINGSTAR LAW GROUP

/s/ Harrison M. Gates
Harrison M. Gates
N.C. State Bar. No. 43793
hgates@morningstarlawgroup.com
700 W. Main St.
Durham, NC 27701
Telephone: (919) 590-0364

*Attorneys for Defendants*

28